IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:23-CR-0054-BO

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SALAAM WILLIAMS | ) | |

This matter is before the Court on Defendant Salaam Williams's motion to suppress evidence seized during a drug interdiction at the Wilson, North Carolina Amtrak station. [DE 19]. On 26 February 2024, the Court conducted an evidentiary hearing and heard argument on Defendant's motion. For the following reasons, the Court denies the motion.

## BACKGROUND

The Court derives the following facts from a police report of the incident, [DE 19-1], and the testimony of law enforcement officers at the 26 February hearing:

On the afternoon of 14 September 2022, Detectives Branch and Collier of the Wilson, Police Department went with two other detectives to conduct a drug interdiction at the Wilson Amtrak station. They wore plainclothes, concealed their firearms, and presented identification only after engaging citizens. Their strategy was simple: observe the passengers at the station for indicators of drug trafficking. Some of the indicators of drug trafficking include traveling alone with small amounts of luggage and observing the detectives' movements with heightened awareness.

Using those indicators, Detectives Branch and Collier identified several individuals whom they suspected of carrying drugs. First they approached an unidentified male traveler. The

detectives introduced themselves, announced their purpose, displayed their credentials, and asked the suspect if they could search his luggage. He complied; no drugs were discovered. At that point, Branch and Collier split up.

Working alone, Detective Branch approached Williams while he sat on a bench on the platform near the door leading into the station. Alone with a small backpack and talking on the phone while observing Detective Branch, Williams displayed several indicators that drew Detective Branch's attention. Branch introduced himself to Williams, displayed his credentials, and told Williams his purpose at the station. Branch then asked Williams for his ticket, which Williams provided freely. Before Branch could ask for Williams's consent to search his backpack, Williams began to repeatedly ask Branch "why are you harassing me?"

Animated, Williams swung his backpack back and forth. This caused Detective Branch to smell marijuana and to see a package of cigars—commonly used to roll marijuana blunts—sticking out of the backpack. Williams handed over the cigar pack, telling Detective Branch that the marijuana in the pack was all he had on him and asking why Branch was harassing him. Williams then went to leave. Branch, believing Williams had more marijuana, stepped toward Williams. Williams then pulled away and ran from the station, tossing his backpack and other personal items. Detective Branch remained with the backpack while Detective Collier and the others chased Williams. But Williams got away. Opening the bag, Detective Branch discovered a vacuum sealed package containing approximately 2,000 glassine bindles of suspected heroin.

On 3 October 2023, the United States charged Williams, by way of indictment, with possessing a quantity of heroin and 40 grams or more of a mixture and substance containing a detectable amount of fentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(1). [DE 1]. On 8 January 2024, Williams's filed the instant motion to suppress. [DE 19]. On 2 February

2024, the United States responded. [DE 20]. The evidentiary hearing was twice continued, (*see* [DE 23, 24]), but was held on 26 February 2024. At that hearing, the Court heard the testimony of Detectives Branch and Collier. The motion is ripe for decision.

## ANALYSIS

The parties spar over a brief moment in Detective Branch and Williams's interaction. Specifically, Williams argues his Fourth Amendment rights were violated when Detective Branch seized him when he showed his credentials and stated his purpose as a member of the drug interdiction team. The United States responds that Branch's initial contact with Williams was a consensual police-citizen encounter that does not implicate the Fourth Amendment because those encounters are not seizures.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. Amend. IV. These protections are not implicated in every police-citizen encounter because not all police-citizen encounters involve the seizures of citizens. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). For example, when a police officer approaches an individual who is willing to listen and asks them a few questions, the Fourth Amendment's prohibitions of unreasonable seizures are not violated because no seizure can be said to occur. *See United States v. Drayton*, 536 U.S. 194, 200 (2002); *see also Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place.").

Instead, a seizure occurs when officers employ a show of authority that restrains the liberty of the citizen. *United States v. Cloud*, 994 F.3d 233, 242 (4th Cir. 2021). The test to determine if such a restraint has occurred is "whether, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States*

3

*v. Peters*, 60 F.4th 855, 862 (4th Cir. 2023) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (plurality opinion)). And the test looks for a show of authority from the perspective of innocent citizen measured objectively. *Cloud*, 994 F.3d at 242; *Bostick*, 501 U.S. at 438. When determining if a reasonable person would feel free to leave, the Court considers several factors including:

> (i) the number of police officers present; (ii) whether the police offers were in uniform; (iii) whether the police officers displayed their weapons; (iv) whether they touched the defendant or made any attempt to physically block his departure or restrain his movement; (v) the use of language or tone of voice indicating that compliance with the officer's request might be compelled; (vi) whether the officers informed the defendant that they suspected him of illegal activity rather than treating the encounter as routine in nature; and (vii) whether, if the officer requested from the defendant . . . some form of official identification, the officer promptly returned it.

*Peters*, 60 F.4th at 863 (quoting *United States v. Black*, 707 F.3d 531, 537–38 (4th Cir. 2013)); *Cloud*, 994 F.3d at 242–43 (describing the same as "broad, non-exclusive categories of facts that may be relevant").

The crucial question here is whether a reasonable person in Williams's circumstances would have felt free to leave in the few minutes before Detective Branch discovered the marijuana. Taking the totality of the circumstances into consideration, the Court concludes that a reasonable person would have felt free to leave. Detective Branch did not make a constitutionally significant show of authority: he approached Williams alone in plainclothes with his weapon concealed. There is no evidence that he spoke to Williams in a commanding voice or used language that would suggest obedience was required. Nothing suggests that he conveyed a message that his requests required compliance. Although Detective Branch asked to see Williams's ticket, asking for a ticket is sufficiently analogous to asking for identification, an act that does not itself indicate coercion. *See Bostick*, 501 U.S. at 437 (explaining that "no seizure occurs when police . . . ask to examine

4

the individual's identification . . . so long as the officer do not convey a message that compliance with their requests is required.").

Williams subjective conduct—mainly, his indignation—is of no moment. The test is objective. *See Cloud*, 994 F.3d at 242 ("[A] show of authority occurs if the totality of the circumstances demonstrates that a reasonable person, measured objectively from an innocent citizen's perspective, would have believed that he was not free to leave.") A reasonable person standing on the train platform fielding Detective Branch's questions would have felt free to leave. Thus, Williams was not seized at that moment and his Fourth Amendment interests were not implicated. Williams's motion to suppress, therefore, is denied.

## CONCLUSION

For these reasons, Defendant's motion to suppress [DE 19] is DENIED.

SO ORDERED, this 29 day of February 2024.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE